# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**January 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CHRISTOPHER T. SCHUDA,**
**Claimant Below, Petitioner**

**vs.)    No. 22-ICA-179    (JCN: 2021022120)**

**QUALITY DISTRIBUTION, INC.,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Christopher T. Schuda appeals the September 19, 2022, order of the Workers' Compensation Board of Review ("Board"). Respondent Quality Distribution, Inc. filed a timely response.[1] Petitioner did not file a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's decision to reject the claim.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Schuda, a truck driver employed by Quality Distribution, Inc. began feeling ill during his shift on or around April 12, 2021. He experienced nausea, vomiting, headaches, hot flashes, and dizziness. After several days of experiencing these symptoms, Mr. Schuda sought treatment from Loretta Brown, FNP-C, on April 21, 2021, and reported that it was recently discovered that his work truck had been leaking exhaust emissions. However, testing showed that Mr. Schuda's carbon monoxide level was 1.4%, which is normal. Ms. Brown diagnosed essential hypertension, non-intractable vomiting with nausea, headache, dizziness, and hot flashes. Mr. Schuda's work truck was evaluated in a shop, where it was repaired for an exhaust leak and then returned to him. At some point not apparent from the appendix record, a workers' compensation claim was filed.

On April 28, 2021, Mr. Schuda returned to see Ms. Brown with continued complaints of dizziness, vomiting, and weakness. Mr. Schuda reported that he had developed the symptoms while driving his work truck, and that the symptoms were

---

[1] Petitioner is represented by Edwin H. Pancake, Esq. Respondent is represented by Christopher Pierson, Esq.

1

alleviated when he exited the truck. Ms. Brown diagnosed him with non-intractable nausea with vomiting, drowsiness, and weakness. Sometime thereafter, Mr. Schuda's truck was again evaluated in the shop.

Mr. Schuda took off work on May 6 and 7 of 2021, to attend a horse show in Ohio. While there on May 7, 2021, Mr. Schuda began feeling right-sided numbness and weakness in his upper arm and lower leg. He presented at Mercy Health Hospital, reported his symptoms, and attributed them to his alleged prior carbon monoxide poisoning. Mr. Schuda was admitted to the hospital, and an MRI of the brain revealed a small acute infarct involving the posterior left basal ganglia. The attending physician noted that Mr. Schuda's situation would be treated as a transient ischemic attack ("TIA"), otherwise known as a mini stroke. Mr. Schuda followed up with Ms. Brown on May 12, 2021, following his hospitalization. Ms. Brown diagnosed essential hypertension, acquired hypothyroidism, acute cerebral infarction, and pure hypercholesterolemia.

Mr. Schuda presented at Charleston Area Medical Center ("CAMC") on May 13, 2021, with complaints of vertigo, nausea, mild slurring of his words, and numbness in the left shoulder and left upper arm, most of which had resolved by the time he arrived at the hospital. He again reported carbon monoxide exposure as a source of his symptoms. Mr. Schuda was admitted for evaluation, and imaging studies were normal. No treatment was recommended. The assessment was brain TIA, hypertension, thyroid disease, and history of TIAs, seemingly based on Mr. Schuda's report. Mr. Schuda was discharged on May 15, 2021.

On May 18, 2021, Mr. Schuda attended a follow-up appointment with Jonathan Lilly, M.D., his primary care physician. Dr. Lilly assessed acquired hypothyroidism, essential hypertension, pure hypercholesterolemia, cerebrovascular accident due to thrombosis of the left middle cerebral artery, and suspected carbon monoxide poisoning. Subsequently, on May 28, 2021, the claim administrator denied the claim, and Mr. Schuda protested.

Dr. Lilly referred Mr. Schuda to Natavoot Chongswatdi, M.D., a family medicine specialist, for evaluation for carbon monoxide exposure and stroke. On June 3, 2021, Dr. Chongswatdi diagnosed Mr. Schuda with carbon monoxide exposure and lacunar infarction, opining that "it is plausible that the carbon monoxide exposure could have a role in the development of [Mr. Schuda's] stroke." However, Mr. Chongswatdi stated that he "cannot say whether it was the primary cause or not" and that "[t]here have been case studies on this topic but no further literature supporting that carbon monoxide is the direct cause of [Mr. Schuda's] stroke." Thereafter, on June 16, 2021, Donald Holcomb II, PA-C, issued a letter indicating that Mr. Schuda had been under his care for TIA.

Mr. Schuda testified via deposition on August 3, 2021, as to his carbon monoxide exposure while driving his employer's truck and what he perceived to be symptoms related

2

to such exposure. His coworker, Karl Klemm, also authored a letter indicating that he had also driven Mr. Schuda's truck and that he had to roll the windows down due to the fumes.

At the employer's request, Mr. Schuda was evaluated by George Zaldivar, M.D., on October 27, 2021. Mr. Schuda reported that Mercy Health Hospital had given him a statement advising that his carbon monoxide exposure was responsible for the TIA. Testing was performed and subsequently, on November 4, 2021, Dr. Zaldivar issued a letter wherein he opined that Mr. Schuda's TIA was not attributable to any carbon monoxide poisoning. According to Dr. Zaldivar, Mr. Schuda reported having his blood drawn approximately three hours after driving his truck on his first hospital visit, and his carbon monoxide level was below 2%. Dr. Zaldivar discussed the half-life of carbon monoxide in the blood stream and stated that if the timeline reported by Mr. Schuda were accurate, he would not have been within the poisonous range at the time he was driving his truck. He further stated that it was undetermined whether Mr. Schuda experienced symptoms such as nausea and vomiting due to carbon monoxide exposure or due to small TIAs that required treatment and diagnosis.

By order dated September 19, 2022, the Board affirmed the claim administrator's denial of the claim. The Board made findings regarding the treatment Mr. Schuda had received, including Dr. Chongswatdi's evaluation wherein he determined it was "plausible" that Mr. Schuda's carbon monoxide exposure could have a role in the development of his stroke. The Board further pointed out Dr. Zaldivar's conclusion that Mr. Schuda did not have carbon monoxide poisoning and that his TIA was not due to carbon monoxide exposure. After reviewing the evidence, the Board found that the preponderance of the evidence demonstrated that Mr. Schuda failed to establish that he sustained carbon monoxide poisoning or a work-related TIA. Mr. Schuda appeals the Board's order rejecting his claim.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

3

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Mr. Schuda argues that the Board erred in affirming the claim administrator's decision to reject the claim. Mr. Schuda avers that the evidence establishes that he was exposed to carbon monoxide, which likely resulted in his TIA. Mr. Schuda claims that the reports of Dr. Lilly, the physicians from Mercy Health and CAMC, and Dr. Chongswatdi, all confirm that Mr. Schuda suffered an illness as a result of his carbon monoxide exposure. While Dr. Zaldivar did not believe that Mr. Schuda had carbon monoxide poisoning or that the TIA was attributable to any carbon monoxide exposure, Mr. Schuda believes that Dr. Zaldivar's evaluation was too remote in time to be able to accurately confirm any diagnoses. As such, Mr. Schuda avers that he has established the requirements for compensability of his claim and that the Board's order should be reversed.

Upon review, we find no error. Here, there is no evidence that the Board clearly erred in finding that Mr. Schuda failed to demonstrate that his claim should have been held compensable. No physician of record clearly diagnosed Mr. Schuda with carbon monoxide poisoning or attributed his TIA to his employment. In fact, contrary to his claims, most of the medical records show that the physicians are simply repeating Mr. Schuda's own reports of carbon monoxide poisoning and his attribution of the TIA to such exposure. While Dr. Chongswatdi stated that it was "plausible" that Mr. Schuda's carbon monoxide exposure played a role in his TIA, he was unable to confirm a causal connection and stated that there was no literature to support a finding that Mr. Schuda's carbon monoxide exposure led to his TIA. Further, Dr. Zaldivar clearly opined that Mr. Schuda's TIA was not due to any carbon monoxide exposure he might have had. Dr. Zaldivar explained the half-life of carbon monoxide and how Mr. Schuda's levels, which were taken within hours of his alleged carbon monoxide exposure, did not place him in even the minimally poisonous level. Given this evidence, we find that the Board did not err, and that Mr. Schuda is entitled to no relief.

Accordingly, we affirm.

Affirmed.

**ISSUED:** January 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

4